UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:24 MJ 2101 JSD |
| | ) |
| CRAIG A. SPIEGEL, M.D., | ) |
| | ) |
| Defendant. | ) |

**MOTION FOR PRETRIAL DETENTION AND HEARING**

Comes now the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Amy E. Sestric, Assistant United States Attorney for said District, and moves the Court to order Craig A. Spiegel, M.D., detained pending trial, and further requests that a detention hearing be held three (3) days from the date of his initial appearance, pursuant to Title 18, United States Code, Section 3141, *et seq*. In support of this motion, the Government states as follows:

1. On March 7, 2024, a federal criminal Complaint was filed alleging Craig A. Spiegel, M.D. ("Spiegel") distributed controlled substances outside of the usual course of professional practice and for no legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1). The Complaint charges Spiegel with, among other things, illegally distributing schedule II controlled substances. Thus, the Court has made a probable cause finding that Spiegel has violated provision841(a)(1) of the Controlled Substances Act.

2. Accordingly, a rebuttable presumption arises pursuant to Title 18, United States Code, Section 3142(e)(3) that there are no conditions or combination of conditions which will reasonably assure the appearance of the defendant as required, and the safety of any other person and the community.

    **I.**    **Applying the Rebuttable Presumption—Along With the Relevant Factors Under Title 18, United States Code, Section 3142(g)—There are No Conditions That Will Reasonably Assure the Appearance of the Defendant or the Safety of the Community.**

    3.    Spiegel is facing extraordinarily serious charges. The statutory maximum of the offense he is facing is up to 20 years of imprisonment. 21 U.S.C. § 841(b)(1)(C). Additionally, based on investigative efforts to date, the Government believes that Spiegel illegally distributed controlled substances to *at least* 25 individuals (probably more) who are either females to whom he issued prescriptions for no legitimate medical purpose in exchange for sexual favors, or other adults to whom he issued prescriptions for no legitimate medical purpose in exchange for cash.

    4.    Examining those 25 individuals alone, the United States is aware of: thousands of text messages to or from Spiegel that substantiate the criminal "tit-for-tat" nature of the prescriptions he issued, in that they expressly discuss sexual exchanges for Spiegel's issuance of prescriptions; over 1,200 individual prescriptions for controlled substances that should not have been issued to the 25 known individuals; and over 73,000 controlled substance pills that Spiegel illegally distributed to the 25 known individuals. The weight of the evidence is simply overwhelming.

    5.    The seriousness of the offense is underscored by the inherently dangerous and reckless nature of the conduct, which has caused real and tragic harm. Controlled substances are highly regulated and require a DEA registration for good reason: they are categorized as such due to their potential for abuse and risk of misuse. 21 U.S.C. § 812(b). Nonetheless, Spiegel continued to prescribe to individuals who he knew were either suffering from severe drug abuse disorders or were diverting the drugs they received from him to others—sometimes even to children. In one instance, Spiegel continued to prescribe controlled substances to an individual, described here as

"Patient 1," in exchange for sexual acts even though he knew she was perilously close to overdosing. She did, in fact, die of an overdose at only 40 years of age.

6. Spiegel's characteristics show that he is undeterred by any consequence to his actions. He continued to engage in his criminal course of distribution even after learning that Patient 1 died of an overdose. He continued to illegally distribute controlled substances after his clinic was searched pursuant to a premises warrant by federal investigators, during which he sat for an extensive interview and was expressly questioned about the dangerous conduct in which he was engaged. He even continued to illegally distribute controlled substances after being invited to the United States Attorney's Office to hear about the problematic, criminal nature of his prescribing practices.

7. Moreover, when the United States first approached Spiegel, it repeatedly requested, through Spiegel's counsel, that he relinquish his DEA registration as a showing of good faith, which he could, at a potential future sentencing, seek to raise to his benefit. Despite months of repeated requests by the Government, Spiegel has refused to voluntarily surrender his DEA registration and still has it to this day.

8. Spiegel's dangerousness to the community is not limited to his prescribing practices. Patient 2 was another woman to whom Spiegel was prescribing controlled substances, and she advised that Spiegel became physically violent with her by forcing her to perform oral sex on him in a public restroom—the door to which he locked once inside with her. Patient 3 was a minor who complained to state authorities that Spiegel was inappropriate with her during a medical examination.

9. Text messages sent from Spiegel to various women also substantiate that many of his interactions were not consensual. For example, he told Patient 4, "You owe me big time" after

issuing her a prescription; he told Patient 5 to "[w]ear less layers" at their scheduled meeting; he told Patient 6 that he sent her "prescriptions assuming [she] would hold up [her] end;" and he guilted Patient 1, "You promise much, but seldom follow through. I am not sure why you waste your breath promising anything."

10. Many of the women to whom Spiegel illegally prescribed controlled substances were individuals he met when they were children and he was their treating pediatrician.

11. In short, Spiegel would be a danger to the community if released on bond, not only because of his ability to prescribing controlled substances, but also because of the longstanding practice he has had of preying on vulnerable women in a sexual, sometimes forcible, manner.

12. Further, the offense conduct, weight of the evidence, and history and characteristics of Spiegel further demonstrate that there are no conditions of release that will reasonably assure his appearance. *See* 18 U.S.C. §§ 3142(g)(1)-(4).

13. Again, Spiegel continued to engage in the conduct for which his is facing charges even after his clinic was searched pursuant to a warrant, he sat for a detailed recorded interview about his prescribing conduct, and he came to the United States Attorneys' Office to hear the Government's concerns, including an overview of the wealth of evidence in this case, including thousands of Spiegel's own text messages.

14. In addition, in recent months, Spiegel has made a variety of decisions that underscore concerns about his risk of flight. According to investigative efforts, Spiegel has not showed up to his pediatric clinic in about six months (though his name is still on the door to his medical suite). He also recently purchased a home that Zillow estimates to be valued at approximately $562,100; his prior Creve Coeur house (which Zillow estimates to be valued at over $1.2 million) has a realtor's lockbox on the door and appears to be empty on the inside. The severe

difference in home values suggests Spiegel could be liquidating assets to increase his mobility. Combined with the apparent close of his medical practice, Spiegel's ties to the community appear to be dwindling.

15. Finally, on March 6, 2024, the Government learned that Spiegel had unusual plans to travel out of Detroit (with no known airfare booked from St. Louis to Detroit) to Miami and then, several days later, to Fort Lauderdale and back to Detroit (again, with no known airfare back to St. Louis). Given that Spiegel is aware of the significant, ongoing federal criminal investigation of him, and that his counsel did not reach out to advise the Government in advance of this travel, at a minimum, red flags are raised as to the purpose of Spiegel's plans.

WHEREFORE, there are no conditions or combination of conditions that will reasonably assure Spiegel's appearance as required and the safety of any other person and the community and the Government requests this Court to order Spiegel detained prior to trial, and further to order a detention hearing three (3) days from the date of Spiegel's initial appearance.

Respectfully submitted,

SAYLER A. FLEMING
UNITED STATES ATTORNEY

 /s/ Amy E. Sestric
Amy E. Sestric, #66219MO
Assistant United States Attorney
Thomas F. Eagleton Courthouse
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200